*The opinion of the Court was delivered by
Cheves, J.
1. The ground for a nonsuit is, that there was wanting, on the part of the plaintiff, an actual possession, which is indispensably necessary to enable him to maintain the action of trespass quare clausum fregit. The general proposition laid down in this ground, no one disputes ; but in most controversies, persons using the same words, apply them to very different ideas. The point, which it should seem, had been very long settled, and ought to have been very clearly settled, has been lately much contested. Some part of this difference of opinion has probably arisen from not fixing the meaning of the term “ actual possession,” which has probably been taken in too limited a sense. Actual possession, is used in contradiction to constructive possession,[1] but does not mean, in all cases, a pedis possesso, though the latter will, in all cases, be an actual possession. A constructive possession, on the other *219 hand, does not mean, in any instance, a case where there has been an actual entry. Thus, to illustrate the question by examples, a person who has the legal title to land, by lease and release, has only a constructive possession, and cannot maintain this action : but, if he enter, he has then actual possession, and can maintain this action ; and this actual possession will continue, though he should not continue to rest with his foot upon the soil, until he be disseised, or until he do some act which may amount to a voluntary abandonment of the possession. 1 Chitty on Pleadings, 175, 177. I think, also, the omission to distinguish between cases, where the action is sustained by title, and where it is rested solely on possession, has been auother cause of the difference of opinion on this subject. Where the plaintiff establishes a good legal title and entry, he is seised and possessed, not constructively, but actually, and can maintain this action. He must have possession besides title ; because the nature of the injury contemplated by the action, is to the possession only. But where he does not rely upon title, but on possession, there the possession must be a possessio pedis ; because less would not furnish that evidence of title to the possession, which this action contemplates. The possession must be rightful. There must be a possession, and a right to that possession.
It is true, that the law takes the fact, that the plaintiff has the present dominion, as evidence of his right to possess, until a contrary title is made out in the defendant, where that dominion extends to present enjoyment of the fruits, or the use of the soil. But whatever view may be taken of this point, it must equally result, that the plaintiff had an actual possession at the time of the trespass, in this case. If an entry only be necessary, he entered and put a tenant on it in 1796. In 1799 he again entered and cultivated it. In 1801, and 1802, he again entered, and was not disseised, until the present defendant entered and committed that trespass for which this action was brought. If an entry be not enough, the evidence proves that he had a continued and unbroken possessio pedis of the part of the tract of land lying on the south side of the river, which, in point of law and fact, was an actual possession. Accordingly, it was not denied in argument, that this possession would have been sufficient, but for two circumstances. 1. That Tyger river, which is said to be a navigable river where it divides this tract of land, ran between that part which the plaintiff cultivated, and the part in dispute. Now if this were admitted to sever the possession, the rule would be entirely without certainty or value. The width and depth of the river will hardly be made the criterion. Where should the line be drawn ? The separation is as distinct, if that be the ground of the argument, where it is made by a stream a foot wide and a foot deep, as by the Santee. If it be the navigable character of the river, that will depend in many instances on the wisdon and liberality of the Legislature, in improving the inland navigation of the country. At one time a tract of land will be *entire; at another divided. It would be a rule utterly uncertain and unsafe. It would deny the benefit of the rule where it would be most wanted. 2d. But it is further said, that the plaintiff’s claim is not to an entire tract, but to two separate tracts: one, that which he cultivates on the south side, the other, the land in dispute. That though it was entire by the grant to Cowden, and by the subsequent grant to Smith, the latter, *220 by subsequent conveyances, divided it into two, and that no subsequent act could unite-them. Now the last member of this proposition is neither fact nor argument, - but bare assertion. In fact, they were united, Oliphant claiming title under the grants to Cowden and Smith, united the whole interest in himself. In fact, they were still more clearly and distinctly united, when the plaintiff purchased the whole interest at sheriff’s sale, and obtained a title for one tract of land, containing the whole quantity, described as lying on both sides of the Tyger river. Why could the original identity not be re-established ? The law, for the purpose of establishing this identity, requires no more than a colorable or apparent title, definite in its limits. Does not the sheriff’s title furnish at least this much ? I have no doubt then, that the plaintiff had. such a possession as enabled him to maintain this action. This was deemed the great point in the case ; for it seemed to be but feebly contested by the counsel for the defendant, that if such possession in the plaintiff was established as would maintain this action, everything else followed of course ; and it does appear to me to be the only point in the case, which deserved consideration. But as the case has been laboriously argued, and has excited much interest, it may be fit to dwell at some length on the other grounds.
2d. The next ground for a nonsuit is the alleged defect in the sheriff’s title. My brethren, who concur with me as to the result of this motion, have doubts of the validity of this deed, seeing that the sale was made by the sheriff of Ninety-Six District, after the establishment of Union Disanl^ decline giving any *opinion on the point. For myself, I entertain with rather more confidence, the opinion to which I inclined on trial. I think the sale was made by the sheriff of Ninety-Six District from necessity. The levy was made by that sheriff, while Union District was a part of Ninety-Six District. By the common law, (aplied in this State to real estate,) the sheriff who levied, had the clear right to complete the exigency of the execution, though his term of office had expired. No change has been made in this law, except, that by an Act of Assembly,[1] the sheriff was to assign^over all unfinished business to his successor, who was to complete it. Who was then the successor of the sheriff of Ninety-Six ? The sheriff of Ninety-Six, or the sheriff of Union ? I am aware that it may be argued, that as to levies within that part of the old District which constitutes Union District, the sheriff of the latter was his successor. If so, in the many divisions and subdivisions of the judicial District of Ninety-Six, (which, at the time of this levy, embraced all the upper part of this State, including the present districts of Edgefield, Abbeville, Pendleton, Greenville, Spartanburgh and Union, and perhaps others,) it would have beeen difficult for the sheriff to have ascertained who his successor was. Was he to transfer the execution, without his books, where the entries concerning it were made ? If, as no doubt in many instances was the fact, there were levies under the same execution in several of the new districts, how could he transfer the execution to several districts ? The cotemporaneous construction and practice, throughout the State, where judicial districts were divided, I believe, was according to the practice in this ease. On the whole, I think it the best construction which the several Acts of Assembly, taken in connection with *221 the previously established law, can receive, and I adhere to it with the more satisfaction, as a different construction, (if I be right as to the practice,) would shake the titles to a great many estates.
But were this conveyance void, it would furnish no *groundfor a nonsuit in this case, for several reasons. 1st. The plaintiff’s possession was sufficient evidence to sustain this action, until the defendant should -have proved a title in himself. 2d. The plaintiff had given evidence - of a long possession in himself, which, of necessity, was to go to the jury as proof of title under the Statute of Limitations. In any view, therefore, this was no ground for a nonsuit.
We come now to the grounds of the motion for a new trial:
The first is, that the possession of Bailey was not an adverse possession ; because it is alleged, it was obtained fraudulently. Whether this would prevent the possession from being adverse, it is quite unnecessary to determine. It is quite as effectual, in legal effect, to commence with the possession of Oliphant, as with that of Smith, and both might be laid out of the question, and the possession of the plaintiff himself, in legal effect, which is simply to give title, under the statute of limitations, is equivalent to both. The only difference would be this, if the possession of the south side were not a legal possession of the north side, then the possession of Oliphant might be material; because he actually occupied and cultivated by his tenants, from 1785 to 1794, the land in dispute. But. in no possible view of the case is the possession of Bailey, or any possession previous to Oliphant’s, of the least materiality.
2d. The next and last ground is, that the grant to Archer Smith, under which the plaintiff claims, is of later date than that to William Cowden, under which the defendant claims, and that the possession.of Cowden, and those claiming under him, was continued with little interruption till 1783; that therefore the plaintiff’s title is fatally defective, and the defendant’s genuine. This ground embraces the title both of the plaintiff and defendant.’ We will first consider the title of the defendant:
As it regards possession, the testimony is, that fifty-three or four years ago, (referring-to the time of the *trial,) which must have been in 1763 or 1764, Wyley went into possession. Bailey went into possession in 1776. -The intervening time is twelve or thirteen years, (¿nd the testimony proves a possession according to one witness of six years, and according to. another of seven years.) Yet the possession-which is proved,'begins with 1763 or 1764, and ends with 1776. The possession; therefore-,• could not have been continued and connected. One of the tenants, James'Smith, is not proved to have held under Wyley. During Wyley’s life, the possession did not exceed two years ; and the possession, though broken and unconnected, by his executors or administrators, did not exceed three or four years. Those under whom the defendant claims,. therefore, clearly had no such possession as would give title, previous to 1776 ; and any possession afterwards, as it did not extend, even according to the statement in this ground, beyond 1783, was wholly immaterial. But even that statement rests on the possession of Archer Smith, by his ■ tenants under the' assumption of facts, that it was proved to have been fraudulently obtained, and the assumption of law that it. was not there-. fore adverse.
•Gunning, for the motion. Gist, contra.
2d. Now as to the defendant’s deduction of title : It is defective, because (as the verdict of the jury has established on very satisfactory proof) Robert Cowden was not the heir of William Cowden, and had no title when he conveyed. It was argued, that Walter had died before Robert, and therefore, though he was not' the heir of William, he was the heir of Walter, and through him succeeded to the title. But the evidence does not prove when Robert died, and renders it probable that Walter survived him If, however, Walter died first, it would make no difference in the defendant’s title; for nothing which Robert inherited after the conveyance to Wyley, could have passed under it. The defendant therefore had proved no title.
The defendant -having made out no title, the plaintiff need go no farther than his possession to sustain this verdict. But it may be said, in one word, that *as the grant to Archer Smith, is valid against all but those who shall prove a better title, there is no defect in the plaintiff’s chain of title, unless the sheriff’s title be invalid; and that under the statute of limitations, if possession of a part be possession of the whole, according to the case of Read v. Eifert[1], his possession from 1795 to 1808, or 1809, gives him a perfect title under the statute of limitations.
I am, therefore, of opinion that the motions for a nonsuit and a new trial ought to be refused.
Colcock, Nott and Gantt, JJ., concurred.

 See McColman v. Wilkes, 3 Strob. 470.

 1791, 7 Stat. 263, § 7; 1768-9, 7 Stat. 202, § 9.

 Infra, 374.
See oases cited in McColna v. Wilkes, 3 Strob. 465.